## THE STATE, ON THE RELATION OF PHILIP M. BUSH, v. THE WARREN FOUNDRY AND MACHINE COMPANY.

*A mandamus* commanding an incorporated company to transfer certain shares of its stock to a person who purchased them at a sale made by auditors in attachment, will not be awarded, if the stock has been regularly transferred and new certificates issued to a person presenting a *prima facie* title, before the attachment issued, although it be shown that there is reason to doubt whether the transfer was not made to defraud creditors.

A writ of attachment having been issued out of the Circuit Court of the county of Warren, against Depue S. Miller, by virtue of which the sheriff, on the twenty-second of March, 1866, attached two hundred shares of the Warren Foundry and Machine Company, as the property of defendant, appraised as of the value of ten thousand dollars, such proceedings were subsequently had that a judgment was obtained in favor of the plaintiffs and other applying creditors, including the relator. The court thereupon made an order that the auditors make sale and assurance of the said stock, or such part thereof as should be necessary to satisfy the debt of the plaintiffs and the applying creditors. Afterwards the auditors reported that they had duly advertised and sold the said stock to Philip M. Bush, the relator, for the sum of twenty-five hundred dollars, and thereupon the court ordered that the said report be confirmed in all things; that the said sale be approved as valid and effectual in law, and that the said auditors make distribution of the proceeds.

The relator served a copy of the last mentioned rule on the president and secretary of the company, and requested them to transfer to him the said two hundred shares of stock, which they declined to do. It appeared that Mr. Miller had owned such stock, and held the certificates ; but that before the issuing and service of the attachment, the same had been regularly transferred on the books of the company to Israel L. Day, and new certificates issued in his

name, the old certificates having been surrendered, except those for twenty-nine shares, which were alleged to have been lost. Testimony was produced on behalf of the relator, which, it was claimed, tended to show that the alleged sale and transfer of the stock to Day, who was the son-in-law of Miller, were made to defraud Miller's creditors.

A rule having been obtained calling on the company to show cause why a *mandamus* should not issue, commanding them to transfer the said stock to the relator, the same was argued before Justices ELMER, BEDLE, and DALRIMPLE, by

*J. G. Shipman*, for the relator, and

*A. G. Richey*, for the company.

The opinion of the court was delivered by

ELMER, J.    If the sale of the stock, as made, can be held to be valid, which it is not necessary to decide, it must be on the ground that what was done amounted to a virtual assignment of choses in action to the relator, or creditor, authorized by the thirty-sixth section of the attachment act. (*Nix. Dig.* 41.)*  The seventh section of the act respecting executions, (*Nix. Dig.* 268,)† which authorizes the sale of stock by an officer, does not extend to sales by auditors in attachment, who, by the thirty-fifth section of the attachment act, are only empowered to sell goods, chattels, lands, and tenements.

The rule is well settled, and ought to be adhered to, that the court will not interfere, by way of *mandamus*, unless there is a clear legal obligation shown to perform the duty required. *The State* v. *Jacobus*, 2 *Dutcher* 135 ; *The King* v. *Bank of England*, *Doug.* 524. So far from this being shown in this case, it appears that the officers of the company had actually transferred this stock to a person presenting a *prima facie* title, several weeks before the writ of attachment issued. It would seem that twenty-nine of the shares were in fact transferred without requiring the sur-

* *Rev., p.* 51, ¿ 52.   † *Rev., p.* 389, ¿ 4.

render of the original certificates, and without adequate proof of their loss; but the missing certificates never came into the hands of the auditors or of the relator, and it appears, have been since delivered to the officers of the company. All the shares once owned by Miller, were by him assigned to Day, and the transfer actually made on the books of the company, and new certificates issued, before the stock was attached.

The argument mainly insisted on by the counsel for the relator was, that the evidence produced discloses a strong doubt, whether the transfer was not made to defraud the creditors of Miller, and that by awarding an alternative *mandamus*, a return will be required, upon which an issue may be taken, and that question determined by the verdict of a jury. But this would be to commence with a plain departure from the rule of not allowing this writ in any other than a clear case; for the fact that the relator's title to the stock he claims, supposing it to be otherwise good, depends upon his being able to set aside a prior title, on the ground that it was fraudulent and therefore void, shows that the case is necessarily doubtful. No authority for trying such a question, by means of proceedings on a *mandamus*, was produced. A suit at law, or a bill in equity, is the appropriate remedy.

The rule to show cause must be discharged, with costs.

CITED in *Curtis* v. *Steever*, 7 *Vroom* 307.